DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant Randall R. Rinehart appeals his conviction for domestic violence, in violation of R.C. 2919.25, entered by the Chillicothe Municipal Court. Appellant argues that the trial court erred by denying appellant's motion for acquittal, made in accordance with Crim.R. 29. Appellant also argues that his conviction was against the manifest weight of the evidence.
 {¶ 2} For the reasons that follow, we agree with appellant's first argument and reverse the judgment of the trial court.
 I. Appellant's Arrest and Conviction {¶ 3} On June 6, 2001, a complaint was filed charging Defendant-Appellant Randall R. Rinehart with domestic violence, a violation of R.C. 2919.25(A). The complaint alleged that appellant knowingly caused physical harm to Bridget Wafford. Appellant pled not guilty to the charge and a jury trial was scheduled by the Chillicothe Municipal Court.
 {¶ 4} On July 10, 2001, a jury trial was conducted. Wafford, the alleged victim, testified that on June 5, 2001, she and appellant consumed large amounts of alcohol at several bars. On their way to Wafford's apartment, they became involved in an automobile accident. Apparently, both Wafford and appellant were drunk and appellant became angry about the auto accident. Wafford denied, contrary to the oral and written statements that she gave to law enforcement officers on the night of the incident, that appellant caused her to suffer physical harm. The substance of appellant's testimony was that the automobile accident must have caused her injuries.
 {¶ 5} Wafford further testified that appellant is her boyfriend and that they loved each other. Wafford stated that: (1) appellant stayed at her home on more than one occasion; (2) she and appellant "date"; (3) appellant does not keep clothes or belongings at her apartment; (4) appellant uses Wafford's toothbrush and Wafford's son's deodorant; and (5) on occasion Wafford and appellant wear each other's clothes. Wafford testified that she and appellant have not "lived together."
 {¶ 6} The prosecution, with the trial court's permission, proceeded to treat Wafford as a hostile witness and impeach her with her prior statements made to law enforcement officers. Wafford acknowledged that immediately after the incident in question, she informed the police officers that appellant struck her and caused her physical harm. Wafford also testified that for a six-month period she was employed as a victim's advocate for the Chillicothe Municipal Court.
 {¶ 7} Wafford's neighbor, Bethany Locklear, also testified at the trial. Locklear lives across the street from Wafford. She testified that she had known appellant for a couple of years and Wafford for a couple of months. Locklear testified that she had seen appellant at Wafford's apartment "two or three" times, and that on those occasions appellant was accompanied by Wafford.
 {¶ 8} Ross County Sheriff's Department Deputy Harry Elliot testified that he drove to Wafford's apartment in response to a call concerning the incident. Upon his arrival, he found Locklear trying to comfort Wafford. He also noticed Wafford bleeding from her nose and mouth. Evidently, appellant was no longer at the scene. The deputy further testified that he noticed a small bag of adult male clothing inside the apartment near the main entryway. The deputy, however, acknowledged that the clothes appeared to have come from the Ross County Jail. According to the deputy, Wafford indicated to him that appellant lived with and harmed her. The deputy then secured an arrest warrant for appellant.
 {¶ 9} Corporal Stanley Addy of the Ross County Sheriff's Department testified that several hours following the incident, he drove to Wafford's residence to respond to a call that appellant could be found at that location. Apparently, upon arrival at Wafford's residence, Addy noticed, in addition to the injuries to Wafford's mouth and nose, a "massive" bruise behind Wafford's right ear that extended to her right cheek. Appellant was found "passed out" in bed.
 {¶ 10} Upon arrest, appellant asked the officer if he could retrieve the small bag of clothing by the front door of Wafford's apartment. Apparently, the small bag contained appellant's underwear and socks because he had just been released from jail prior to the incident.
 {¶ 11} The jury found appellant guilty on one count of domestic violence and not guilty on a second count of domestic violence.
 II. The Appeal {¶ 12} Appellant timely filed his notice of appeal and presents the following assignments of error for our review.
 {¶ 13} First Assignment of Error: "The court below erred by overruling appellant's motion for judgment of acquittal pursuant to Criminal Rule 29, as the evidence was not sufficient to result in a conviction.
 {¶ 14} Second Assignment of Error: "The jury below lost its way by rendering a verdict of guilty, such verdict being against the manifest weight of the evidence."
 A. Motion for Acquittal {¶ 15} In his First Assignment of Error, appellant argues that the state failed to present sufficient evidence during its case-in-chief to support a conviction for domestic violence. Appellant's precise argument is that the state failed to put forth evidence that he was a "family or household member" as defined by R.C. 2919.25. Thus, appellant concludes that the trial court should have granted his motion for acquittal.
 {¶ 15} Crim.R. 29(A) provides:
 {¶ 16} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case." Crim.R. 29(A).
 {¶ 17} "When a motion to acquit under Crim.R. 29(A) has been overruled by a trial court, the question for a reviewing court is whether, viewing the evidence in the light most favorable to the state, a reasonable mind might fairly find each element of the offense proven beyond a reasonable doubt." State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus; State v. Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492; State v. Smith (1998), 130 Ohio App.3d 360, 720 N.E.2d 149.
 {¶ 18} To support a conviction for domestic violence, the prosecution must prove, beyond a reasonable doubt, that one "knowingly cause[d] or attempt[ed] to cause physical harm to a family or household member." R.C. 2919.25(A). The statute further provides:
 {¶ 19} "As used in this section and sections 2919.251 and 2919.26
of the Revised Code:
 {¶ 20} "(1) `Family or household member' means any of the following:
 {¶ 21} "(a) Any of the following who is residing or has resided with the offender:
 {¶ 22} "(i) A spouse, a person living as a spouse, or a former spouse of the offender;
 {¶ 23} "* * *;
 {¶ 24} "(2) `Person living as a spouse' means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within one year prior to the date of the alleged commission of the act in question." R.C. 2919.25(E).
 {¶ 25} The Supreme Court of Ohio has held that the essential elements of cohabitation are: "(1) sharing of familial or financial responsibilities and (2) consortium." State v. Williams, 79 Ohio St.3d 459,465, 1997-Ohio-79, 683 N.E.2d 1126. Several factors that may serve to establish shared familial or financial responsibilities include provisions for shelter, food, clothing, utilities, and commingled assets. See id. Factors to consider in the establishment of consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations. See id. "These factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact." Id.; see, also, Geitz v. Geitz (May 20, 1999), Jackson App. No. 98CA833.
 {¶ 26} "In determining issues such as whether two persons had cohabited for purposes of R.C. 2919.25(E)(2), `courts should be guided by common sense and ordinary human experience.'" State v. Colter (Mar. 17, 2000), Montgomery App. No. 17828, quoting State v. Young (Nov. 20, 1998), Montgomery App. No. 16985.
 {¶ 27} In the case sub judice, appellant concedes that there is sufficient evidence to show the element of consortium.
 {¶ 28} Further, the following facts were adduced at trial: (1) appellant spent the night at Wafford's home on more than one occasion; (2) appellant was present at Wafford's apartment only when accompanied by Wafford; (3) Wafford and appellant had a social relationship; (4) other then appellant's small bag of clothing from the jail, appellant had no other belongings at Wafford's apartment; (5) appellant occasionally used Wafford's toothbrush and her son's deodorant; and (6) on occasion, Wafford and appellant wore each other's clothes.
 {¶ 29} The state relies on these facts as evidence that appellant lived with (i.e., cohabited with) Wafford and shared familial or financial responsibilities. However, none of these facts, either individually or collectively, supports a finding that appellant shared familial or financial responsibilities with Wafford or cohabited with her.
 {¶ 30} Common sense and ordinary human experience dictate that all of these facts are often found in dating relationships, which we would not consider to constitute cohabitation. To find cohabitation in the case sub judice would extend the reach of domestic violence laws well beyond that intended by the legislature, since any assault occurring between individuals with a social relationship could be classified as domestic violence.
 {¶ 31} Accordingly, although "the burden of proving cohabitation does not appear to be substantial," we find that the state has not met its burden in the case sub judice. Young, supra. Thus, after weighing the evidence in the light most favorable to the state, we find that no rational trier-of-fact could have found, beyond a reasonable doubt, that appellant cohabited with Wafford, and thereby committed the offense of domestic violence.
 {¶ 32} Accordingly, we sustain appellant's First Assignment of Error.
 B. Manifest Weight of the Evidence {¶ 32} Based on our disposition of appellant's First Assignment of Error, we find that the remaining assignment of error is rendered moot. See App.R. 12(A)(1)(c).
 III. Conclusion {¶ 33} Consequently, we REVERSE the judgment of the trial court and remand for further proceedings consistent with this opinion.
Judgment reversed, and remanded.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED, and the cause remanded to the trial court for further proceedings consistent with this opinion, costs herein taxed to appellee.
The Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the CHILLICOTHE MUNICIPAL COURT to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment Only with Opinion.
Abele, P.J.: Dissents.